THEODORE POMEROY & others *vs.* REFINE LATTING.

A writ of entry to foreclose a mortgage to " The Copake Iron Works," may be maintained by the individuals who compose a firm, and do business, and received the mortgage, under that partnership name.

If the owner of land makes two mortgages thereof, and in the second mortgage, which is given merely to indemnify a surety upon a note who has since paid nothing thereon, reserves to himself the right to cut and dispose of all the wood on the premises, and in the first mortgage stipulates for the right to make coal from the wood, under an agreement which provides that he shall deliver the same to the first mortgagees, and that the amount which may be due thereon shall be indorsed on the mortgage note, an assignee of the second mortgage has no right to complain, in a suit against him to foreclose the first mortgage, of a settlement fairly made between the mortgagor and the first mortgagees, by which the amount to be so indorsed is ascertained and determined, and is indorsed accordingly, although in such settlement a set-off was allowed for supplies furnished by them to enable the mortgagor to go on with his work, and to 'a third person with whom he had a contract respecting the same subject matter; but conditional judgment will be entered for the amount due on the note, after deducting the indorsement.

WRIT OF ENTRY to foreclose a mortgage. The case was referred to a master, from whose report the following facts appeared :

On the 29th of March 1850, Adolphus Decker and John H. Scott, who were then seized in fee of the premises, executed a mortgage thereof to the Copake Iron Works, under which name the demandants, with one Pomeroy since deceased, did business as partners, to secure a note of $1100. This mortgage contained the following provisions : " Subject to the payment of the sum of $2000 secured by a mortgage of this date to Hugh McLellan of Hudson, by the parties of the first part hereto. And we do also convey unto the said Copake Iron Works all that certain wood which is chopped on said farm, and the right at any time said Works may choose to go on to said farm and chop or cause to be chopped wood sufficient to make them secure, to their own satisfaction, in certain obligations which said Decker & Scott have entered into with said Works; which wood, when chopped, we convey to them ; but said Works agree not to interfere with or molest said 'Decker & Scott from making coal from said wood, as per contract with said Works of March 27th 1850."

19 *

By a mortgage acknowledged March 29th 1850, Decker & Scott conveyed the premises to Hugh McLellan, to indemnify him for signing as surety for the grantors two notes to the Copake Iron Works, of $1000 each. This mortgage contained the following provision : " But the condition of the foregoing mortgage is that they, the said Decker & Scott, reserve to themselves the right to chop and dispose of all the wood on the said farm ; meaning that they shall have the right to make any disposition of said wood, standing or otherwise, that they may choose." This mortgage, and the equity of redemption of the premises, were afterwards conveyed to the tenant, the assignment of the mortgage being made in November 1855.

The two mortgages and the several notes referred to were all executed at the same time, and McLellan has never paid anything on the notes signed by him as surety, nor have Decker & Scott, except through their accounts with the demandants, as hereinafter mentioned.

The contract of Decker & Scott with the demandants, of March 27th 1850, provided for the delivery by the former to the latter of coal, at different times, and at a specified price, and that the amount which might be due thereon should be indorsed on the note of $1100. In pursuance of this contract, and of the stipulation in the mortgage to the demandants, Decker & Scott proceeded to cut wood and convert it into coal and deliver the same to the demandants, who from time to time furnished goods and money to Decker & Scott, paid their orders and did their blacksmithing work. No express agreement was proved that one side of this account should be applied to balance the other, but Decker testified that the work could not have been carried on unless the demandants had furnished supplies. On the 12th of February 1853, the parties met and examined their accounts, and made a settlement in writing, by which it was found that the balance due from the demandants on the same, including interest to that time on the note for $1100, was $376.11 ; and that sum was accordingly indorsed upon the note, with the interest due thereon at that time. No other sum was ever paid on the note by Decker & Scott ; but the demandants afterwards received a

further sum by virtue of a similar arrangement with a tenant to whom Decker leased the premises.

One item of charge against Decker & Scott which was included in the settlement between them and the demandants was for goods furnished to J. M. Suydam, to the amount of $414.44, and the defendants contended that this item should be struck out. Decker & Scott had a contract with Suydam respecting the same subject matter, and they authorized the demandants to deliver to him goods as he might want them; and the master reported that the settlement, including the item for goods furnished to Suydam, was fairly and understandingly made between the parties.

The tenant contended that the demandants were bound by express agreement and by the rule of law to apply the whole proceeds received by them without abatement to the reduction of their debt; and that, if this were not so, still if at any time there was a balance due from the demandants on account of such proceeds, they were bound to apply it on the note, and not hold it to meet future advances. The master stated an account, irrespective of these claims of the tenant, by which the amount due on the note, on the 1st of March 1861, was $907.37; and he also stated an account made up on the principles contended for by the tenant.

Upon this report, the case was by agreement of parties submitted for decision to the court, without a jury; and *Putnam*, J. fixed the amount for which conditional judgment should be entered, with interest to July 12th 1861, at $878.52, saving to the tenant all questions of law.

*I. Sumner*, for the tenant.

*J. D. Colt*, for the demandants.

MERRICK, J. The tenant objects that this action cannot be maintained by the demandants because the mortgage deed under which they claim purports to be made to the Copake Iron Works, and not to them. But upon the facts reported, this objection cannot prevail. It was in proof before the master that the demandants were copartners doing business under the name and firm of the Copake Iron Works; that they advanced

the money for which the notes secured by the mortgage were given, and that the deed upon its execution was delivered by the mortgagors to them as the grantees described in it. This is sufficient. In the description of the grantees there was a latent ambiguity, which it was competent to the demandants to explain by extrinsic evidence. 1 Greenl. Ev. §§ 297, 301. In *Miller* v. *Travers*, 8 Bing. 247, it was said by Tindal, C. J., that " in all cases in which a difficulty arises in applying the words of a will to the thing which is the subject matter of the devise, or to the person of the devisee, the difficulty or ambiguity which is introduced by the admission of extrinsic evidence may be rebutted and removed by the production of further evidence upon the same subject." The same rule is applicable to conveyances by deed. In Com. Dig. Grant, A. 2, it is said that the grantor and grantee in a deed regularly ought to be named by their Christian names ; but that it is enough if there be a sufficient description of them whereby they may be known. Ib., Capacity, B. 4. This rule is familiar, and appears to be applicable to every species of contract. *Medway Cotton Manufactory* v. *Adams*, 10 Mass. 360. *Shawmut Sugar Refining Co.* v. *Hampden Fire Ins. Co.* 12 Gray, .

It has heretofore been determined in this action that the mortgage deed to the demandants, which was executed simultaneously with the execution of a mortgage deed by the same mortgagors to McLellan, the assignor of the tenant, gives to them a prior seisin and right of entry, and postpones the right of McLellan and those claiming under him, as against the demandants, to a time when he or they shall be called upon for the payment of the notes on which he was surety, and from his liability on which it.was the purpose of the mortgage to him to indemnify and save him harmless. *Pomeroy* v. *Latting*, 15 Gray, . That therefore is no longer an open question.

It remains therefore only to determine whether any, and if any what, sum is due to the demandants upon the notes described in the mortgage deed.

Upon this subject it is shown in the master's report that, upon the execution of the two mortgages to the demandants, Decker

& Scott, in pursuance of the stipulations contained in those mortgages and in a certain written contract between them and the demandants, cut wood and trees from the mortgaged premises and converted the same into lumber and coal, which they delivered from time to time to the demandants, who credited the same in their books to the mortgagors at rates and prices the accuracy of which is not contested. But during the period within which the coal and lumber were thus delivered, the demandants afforded aid to Decker & Scott, by furnishing them with various articles of merchandise, by doing their blacksmith work, and by paying their orders; without which assistance and supplies, it was in evidence that they would have been unable to procure, make and deliver the coal and lumber from the premises according to their contract. On the 12th of February 1853, the parties met, examined and adjusted their accounts, and made a final settlement, which is found by the master to have been fair and right. The balance which upon this settlement of accounts was found due to Decker & Scott was indorsed on the note to the demandants. They subsequently received additional quantities of wood and lumber, the value of which having been applied by them to the payment of the note, left due upon it, according to the statement in the report, on the 1st March 1861, the sum of $907.37. This, in the opinion of the court, is the sum which was then due to the demandants, to which is to be added interest from that date to the time of entering up the conditional judgment in their behalf.

In opposition to this conclusion the tenant contends that, by the terms of the agreement of the parties, the demandants were bound, and especially in his favor as the assignee of the second mortgage, to apply all the proceeds of the land, received in the form of coal and lumber, to the payment of their debt, without deducting therefrom any credits to which they were entitled for supplies and advances made to Decker & Scott to enable them to carry on and execute the work; or, if this rule is not to be adopted, still if at any time during the progress of the work and the delivery of the coal and lumber there was upon a statement of the accounts a balance due to Decker & Scott, that that

balance should then be applied to the payment of the note. And they further contended that the advances made on the orders in favor of Suydam, which were charged and allowed in the settlement of the 31st of March 1854, ought to be wholly stricken out and disallowed. But we think it is plain that none of these claims should prevail. It is obvious that there is no special equity in favor of the tenant. As the owner of the equity of redemption, he stands in the place of Decker & Scott, who have made a fair settlement with the demandants, and obtained all the allowance towards the payment and satisfaction of their note, which they considered fair and just, and all to which they were entitled; and as the assignee of the mortgage to McLellan, he certainly does not show himself entitled to any peculiar favor. That mortgage was given to McLellan merely to indemnify and save him harmless as surety upon the note of Decker & Scott; and it distinctly appears that neither he nor any of his assignees have ever paid, or offered to pay, any part of the note thus guaranteed. But still further. In recurring to this mortgage, it appears that it contains an express stipulation that Decker & Scott reserve to themselves the right to chop and take away all the wood upon the premises, and make such disposition of it as they should choose to do. In the exercise of this reserved right, they did chop and take away the wood and trees on the mortgaged premises, and disposed of the same, as they had a full right to do, by a sale and delivery thereof in the form of coal and lumber, to the demandants for a full and just consideration, received partly in supplies advanced and partly as an admitted payment on their note. The order in favor of Suydam was for like supplies and for the same purpose, and was therefore properly taken into consideration and allowed by the parties in their final settlement. And then, also, on looking at the written contract above referred to, it is seen that the agreement of the parties was, not that all the proceeds raised from the farm, but only that the amount which should be found to be due at the time when payment was to be made, should be applied towards satisfaction of the mortgage note. This is precisely what was done. And in fact it fully appears

that Decker & Scott were allowed, and there were indorsed on their note the entire net proceeds of the wood and trees thus taken from the land. The result therefore to which the master arrived, in relation to the settlement of the 12th of February 1853 and the amount then remaining due on the note, was just, and in accordance both with the contract and the equitable rights of the parties.

The counsel for the demandants insists that the court should find the full amount due on all the notes mentioned in the two mortgages and then enter the judgment, conditional that if the tenant fail in sixty days to pay the amount, the demandants shall have possession of the premises. But such judgment is not required, nor would it be correct in this action. We are not however prepared to say, that, upon a bill in equity, in which all the facts disclosed in this case should be duly set forth, a decree might not properly be made, that, as the object of the mortgage to McLellan was, in substance, for the purpose of securing the payment of the notes described in it, the tenant should hold the mortgage, until such payment should be made, as the trustee of the creditor, or, if need be, assign it to him for his benefit. But of this, as the precise case is not before us, it is unnecessary to express a definite opinion.